No. 77,384

STATE OF KANSAS, *Appellee*, v. KENNETH D. HEMBY, JR.,
*Appellant*.
(957 P.2d 428)

Opinion filed April 17, 1998.

*Hazel Haupt*, assistant appellate defender, argued the cause, and *Randall L. Hodgkinson*, assistant appellate defender, and *Jessica R. Kunen*, chief appellate defender, were on the brief for appellant.

*David Lowden*, assistant district attorney, argued the cause, and *Nola Foulston*, district attorney, and *Carla J. Stovall*, attorney general, were with him on the brief for appellee.

The opinion of the court was delivered by

ABBOTT, J.: This is a direct appeal by the defendant, Kenneth D. Hemby, Jr., from his convictions by a jury of one count of rape and one count of aggravated criminal sodomy. He received a controlling sentence of 15 years to life.

The defendant originally pled guilty to one count of rape and one count of aggravated criminal sodomy. For these convictions, he received a controlling sentence of 12 to 35 years. His convictions were set aside by the Kansas Count of Appeals in two unpublished opinions.

Eventually, the defendant was tried, convicted, and sentenced for the same crimes he originally pled guilty to. He appeals, contending he was denied a statutory speedy trial; that an erroneous instruction was given; that he received a longer sentence because he asserted his constitutional right to remain silent; and that K.S.A. 22-4909 of the Kansas Sex Offender Registration Act (KSORA) is unconstitutional as applied to him.

## I. STATUTORY SPEEDY TRIAL

Under K.S.A. 22-3402(1), a defendant who is held in custody must be brought to trial within 90 days from the date a mandate

ordering a new trial is received by the trial court, unless any delays in bringing the defendant to trial are the result or application of the defendant. The Sedgwick County District Court received and filed the Court of Appeals' mandate ordering a new trial on November 14, 1995. Since the defendant was being held in custody, the State had until February 12, 1996 (90 days from November 14, 1995) in which to bring him to trial pursuant to K.S.A. 22-3402(1). Trial was scheduled for February 5, 1996.

The trial court appointed trial counsel for the defendant on January 4, 1996, 51 days after receipt of the mandate ordering a new trial. On January 9, 1996, the trial court ordered the defendant returned to Wichita from the state prison in Hutchinson so that the defendant could stand trial for the crimes charged in Sedgwick County. The defendant was transported to Wichita on January 17, 1996. The defendant's appointed trial counsel met with him for the first time the next day, on January 18, 1996, 17 days before the trial was set to begin on February 5, 1996.

On February 2, 1996, 3 days before the trial was scheduled to begin, the defendant's appointed counsel filed a motion to continue the trial. He claimed that he had insufficient time to prepare for trial because of his late appointment to represent the defendant. Trial counsel asked that any continuance be charged to the State on the theory it was the State's fault that it did not appoint counsel to represent the defendant earlier. Charging this continuance to the State would have pushed the defendant past the 90-day trial deadline and would have left the trial court with two options: (1) dismiss the case for failure to prosecute within 90 days, or (2) provide the defendant with a personal recognizance bond so that he could be released pending trial. If the defendant had been released, the State would have had 120 days from receipt of the new trial mandate to bring the defendant to trial, as opposed to 90 days with the defendant incarcerated. The trial court did not select either one of these options. Instead, the trial court granted the motion for continuance, but charged the defendant with the delay. In rescheduling the trial, the trial court asked the defendant's counsel when he could be ready for trial. The defense counsel responded he could be ready by February 20, but he had a jury trial already

scheduled for the February 20, so he requested that the trial take place on February 26.

On appeal, the defendant claims that the motion for continuance should have been charged to the State, not him, because the only reason his counsel needed a continuance was due to the State's own fault—its delayed appointment of counsel for him so his defense counsel did not have time to adequately prepare for trial. Once this continuance is charged to the State, the defendant argues, it becomes clear that he was held in custody for more than 90 days, from the date the trial court received the new trial mandate, without being brought to trial. As such, based on a violation of his right to a speedy trial, the defendant asks this court to discharge him from further liability on the crimes charged in this case.

The trial court, in charging the time to the defendant, stated:

"Counsel was appointed and was aware of the appointment on January 5th, 1996. The defendant, as I understand [his] counsel's motion, was located [at the] Kansas State Penitentiary in Hutchinson. Hutchinson is less than a 60 mile drive from [the] city of Wichita. If counsel desired to speak to his client prior to him being returned to Sedgwick County, counsel could have taken that short drive to do so.

. . . .

" . . . I will not grant a request for continuance to the defendant and charge it to the State."

We agree. Pursuant to K.S.A. 22-3402(1), as a matter of law, delays in bringing a defendant to trial which result from the defendant's application or fault are not counted in computing the statutory speedy trial period. See *State v. Green*, 254 Kan. 669, 672, 867 P.2d 366 (1994) ("It is the State's obligation to insure that an accused is provided a speedy trial, but delays which are the result of the application or fault of the accused . . . are not counted in computing the statutory speedy trial period."); *State v. Southard*, 261 Kan. 744, 748, 933 P.2d 730 (1997) ("A continuance is properly charged to the defendant if it is either the result of the application of the defendant or if it is the result of the fault of the defendant. [Citation omitted.] A defendant, by his or her conduct, may waive the statutory right to a speedy trial. Such conduct includes requesting . . . the grant of a continuance."); *State v.*

*Brown*, 249 Kan 698, 704, 823 P.2d 190 (1991) ("[I]n determining a speedy trial violation pursuant to K.S.A. 22-3402, 'any period of delay resulting from a continuance granted at the request of the defendant is to be excluded in computing the time for trial under the statute.' ") (Quoting *State v. Porter, Green & Smith*, 228 Kan. 345, 353, 615 P.2d 146 [1980]). Further, a defense counsel's actions in requesting a continuance, which is needed due to the fault of the defense counsel, are attributable to the defendant in computing speedy trial violations. *Southard*, 261 Kan. at 748; see *State v. Bafford*, 255 Kan. 888, 893-94, 879 P.2d 613 (1994) (defense counsel's request of a continuance, with the defendant's understanding, implies defendant's waiver of speedy trial rights).

Hutchinson is a short drive from Wichita. Further, when asking for the continuance, the defense counsel specifically indicated that a 2-week continuance would be okay, but that a 3-week continuance would be better due to another trial he had already scheduled in 2 weeks. Thus, had the defense counsel gone to Hutchinson when he was first appointed, instead of waiting 2 weeks to consult with the defendant until after he was transported to Wichita, the defense counsel would have had all the time he told the court he needed.

Under these facts and circumstances, the trial court reasonably concluded the continuance should be charged to the defendant, and the trial court properly found that the defendant's right to a speedy trial had not been violated.

A similar result was reached in *State v. Bafford*, 255 Kan. at 891-95, where the defendant was found competent to stand trial by the Larned State Security Hospital. The trial court did not order the defendant transported back from Larned until 2 months after the defendant was found competent to stand trial and 4 days before trial was scheduled to begin. The defense counsel requested a continuance and wanted all the additional time charged to the State. However, the trial court charged all the additional time to the defendant, which this court approved.

Further, in *State v. Bean*, 236 Kan. 389, 691 P.2d 30 (1984), the defendant claimed he was forced to request a continuance because the State failed to timely notify the defendant or his counsel of the

trial date. This court held the defendant had at least 16 days' notice, and it charged the continuance to the defendant. In the case before us, the defendant had a conference with his lawyer 17 days before the trial was set.

We conclude the defendant was not denied his statutory right to a speedy trial.

## II. INSTRUCTION

The crimes for which defendant was convicted occurred in March 1991. Thus, we are dealing with the aggravated criminal sodomy statute as it was prior to the 1993 and subsequent amendments.

The defendant's argument is that K.S.A. 21-3506(c) (Ensley 1988), which was in effect when the crime in this case was committed, defined sodomy in pertinent part as oral or anal copulation.

The defendant was charged with oral copulation with the victim. Oral copulation, as defined by the statute in effect when this crime was committed (K.S.A. 1990 Supp. 21-3501[2]), means penetration by the male sex organ into the mouth *or* oral-genital stimulation between the tongue of a male and the genital area of a female.

At trial, the State presented evidence of both types of oral copulation.

The trial court instructed the jury that sodomy included both types of oral copulation and anal copulation. On appeal, the defendant challenged this instruction. There is no evidence in the record from which a juror could conclude that anal copulation took place or was attempted, nor was anal sodomy mentioned at any time in the record before us. The defense counsel refrained from arguing that the two types of oral copulation did not take place; instead, he argued that the acts of oral copulation which occurred were consensual.

The defendant argues the instruction is erroneous because it includes acts not charged in the complaint. The defendant argues first that the complaint does not charge anal copulation or oral genital stimulation.

Defense counsel did not specifically object to the instruction at trial.

"No party may assign as error the giving or failure to give an instruction unless he or she objects and states the grounds for the objection before the jury retires to consider its verdict, unless the instruction is clearly erroneous. K.S.A. 22-3414(3). An instruction is clearly erroneous only if the reviewing court reveals a firm conviction that if the trial error had not occurred, there is a real possibility the jury would have returned a different verdict." *State v. Isley*, 262 Kan. 281, Syl. ¶ 4, 936 P.2d 275 (1997).

"The general rule that instructions should be confined to issues made by the pleadings and should not be broader or narrower than the information (23A C.J.S. Criminal Law § 1311, p. 759) has been consistently adhered to in this jurisdiction. Instructions given in violation of the rule have never been condoned although excused in cases where it was found that the substantial rights of the defendant were not prejudiced . . . ." *State v. Booker*, 197 Kan. 13, 15, 415 P.2d 411 (1966).

The defendant also argues that he has a right to a unanimous verdict as to which act constituted the crime. The defendant claims that six jurors could have based their decision to convict him of aggravated criminal sodomy on an act of oral copulation, an act charged in the complaint, and six jurors could have based their decision to convict him on an act of oral-genital stimulation, an act which was not charged in the complaint. Thus, the defendant claims that the expanded instruction violated his right to a unanimous verdict and constituted reversible error.

Finally, the defendant points out that he has a due process right which insures that any conviction entered against him be for an act included in the charging document. See *State v. Chatmon*, 234 Kan. 197, 205, 671 P.2d 531 (1983) ("A conviction upon a charge not made in the information or properly brought before the court is a clear denial of due process under the Fourteenth Amendment to the Constitution of the United States."). Since the jury may have based its conviction for aggravated criminal sodomy on acts not charged in the complaint—oral-genital stimulation or anal copulation—the defendant asserts that his due process rights under the 14th Amendment have been violated. The defendant claims that the expanded jury instruction, which included acts constituting sodomy that were not charged in the complaint, prejudiced his substantial rights and amounted to reversible error. He asks the court to reverse his conviction for aggravated criminal sodomy based on this error.

Here, the complaint charged the defendant with engaging in the act of "oral copulation" without the consent of the victim but by using force or fear, which constitutes aggravated criminal sodomy. "Oral copulation" is the penetration by the male sex organ into the mouth, *State v. Switzer*, 244 Kan. 449, 456, 769 P.2d 645 (1989) or oral-genital stimulation between the tongue of a male and the genital area of a female. See K.S.A. 1990 Supp. 21-3501(2) (" 'Sodomy' means oral or anal copulation, including oral-genital stimulation between the tongue of a male and the genital area of a female.") By statute, oral copulation includes both penetration of the male sex organ into the mouth and oral-genital stimulation between the male tongue and female genitalia. An act of oral-genital stimulation was in fact charged in the complaint through the use of the term "oral copulation." Hence, the State claims that the inclusion of the oral-genital stimulation language in the instruction at issue was not beyond the charged acts in the complaint and is not a ground for reversal of the defendant's conviction for aggravated criminal sodomy.

The instruction at issue also defined sodomy as anal copulation. Anal copulation was clearly not an act of aggravated criminal sodomy charged in the complaint. Thus, the instruction is broader than the charges in the complaint and is improper. Nonetheless, the trial court did not commit reversible error by including the words "anal copulation" in this instruction defining sodomy.

There is no real possibility the jury would have returned a different verdict if the words "anal copulation" had been omitted from Jury Instruction No. 11. At no time during the trial did the prosecutor suggest or argue that anal copulation occurred, and the jury was told to base its verdict on the evidence presented at trial. There is no indication that the jury disregarded this directive.

"When pleading a crime that may be committed by several different methods in a single-count complaint or information, the State may charge the commission of the offense in any or all of the methods specified in the statute. When the information alleges one or more methods for a commission of a crime, the general rule is that the instructions should be confined to the charges contained in the information and should not be broader or narrower than the information. Instructions given in violation of the rule, however, are excused when substantial rights of the defendant have not been prejudiced." *State v. Davis,* 247 Kan. 566, 572,

802 P.2d 541 (1990) (citing *State v. Turbeville*, 235 Kan. 993, 997, 686 P.2d 138 [1984]).

An instruction should be confined to acts charged contained in the information and should not be broader than the information. The instruction at issue herein described three different acts by which sodomy could be committed—penetration of male sex organ into mouth (oral sodomy); oral-genital stimulation between tongue and female genitalia (oral sodomy); and anal sodomy. Contrary to the defendant's position, these first two acts in the instruction were charged in the information. The information charged the defendant with committing aggravated criminal sodomy by "oral copulation," which refers to *both* penetration of the male sex organ into the mouth and oral-genital stimulation between the tongue and female genitalia.

The instruction listed the correct elements which the jury must find to convict the defendant of aggravated criminal sodomy under the methods charged in the complaint. The jury was told to base its decision on the evidence presented at trial, and there was no indication that it did not do so. There was sufficient evidence to support a jury's conviction that the defendant committed aggravated criminal sodomy through the act of oral copulation—either by penetration of the male sex organ in the mouth or oral-genital stimulation between the mouth and the female genitalia, or both.

The fact that one juror may have relied on one method of oral copulation to convict the defendant of aggravated criminal sodomy and another juror may have relied on another method of oral copulation for such conviction is not improper. This did not violate the defendant's right to a unanimous verdict. In *State v. Timley*, 255 Kan 286, 289, 875 P.2d 242 (1994), it was held:

" 'In an alternative means case, where a single offense may be committed in more than one way, there must be jury unanimity as to the guilt for the single crime charged. Unanimity is not required, however, as to the means by which the crime was committed so long as substantial evidence supports each alternative means. [Citations omitted.] In reviewing an alternative means case, the court must determine whether a rational trier of fact could have found each means of committing the crime proved beyond a reasonable doubt. [Citations omitted.]' " (Quoting *State v. Kitchen*, 110 Wash. 2d 403, 410, 756 P.2d 105 [1988].)

This is the case here. Substantial evidence supports each alternative act by which the crime could have been committed according to the complaint—either by penetration of the male sex organ into the mouth (oral copulation) or oral-genital stimulation between a mouth and the female genitalia (oral copulation). The defendant's defense was consent to all of the sexual acts involved. A rational trier of fact could have found each means of committing the crime proved beyond a reasonable doubt. Thus, the defendant's right to a unanimous verdict that he committed aggravated criminal sodomy was not violated.

Despite the error concerning anal copulation in the instruction, the defendant's substantial rights were not violated. As such, based on a firm conviction, there is not a real possibility, had the error not occurred, that the jury would have reached a different verdict. This issue fails.

## III. SENTENCE

After the verdict, the trial court ordered a presentence investigation report. In that report, under the section entitled "Defendant's Version," the report indicates that the defendant "chose not to give his version of the present offense. He chose not to talk about his prior record or give any information concerning this offense. He said this was the advice of his lawyer." The defendant did not testify at trial and did not make any statement at sentencing.

At sentencing, the prosecutor cited the defendant's silence in the presentence investigation report and argued that the defendant's failure to tell the victim how sorry he was should be a factor justifying a more severe sentence. The trial court then imposed a controlling sentence of 15 years to life, an increase over the 12- to 35-year sentence the defendant received for the original convictions.

The defendant argues he was constitutionally entitled to remain silent and the trial court punished him for electing to do so.

The fallacy with the defendant's argument is other reports were in the record that support the trial judge's comments. The Larned State Security Hospital report indicated that the defendant's background is "replete with antisocial types of behavior . . . [and that

his] current attitude about the crime reflects indifference and a total lack of remorse." The report also stated that the defendant "lacks insight as to how his behaviors affect others; consequently, he does not feel guilt or remorse in reference to the crimes he has recently committed."

In the Topeka Correctional Facility (TCF) report, the defendant was quoted as saying:

> "The victim was a next door neighbor and somebody I'd spent several hours visiting the day of the offense. I felt like she was physically attracted to me. But I am guilty of sexual assault. When she told me she was no longer interested in me sexually, I should have left."

The report also indicated that the defendant admitted participating in the offense but minimized his actions and showed no remorse. The TCF evaluator agreed with the conclusions in the Larned report.

The trial court considered the sentencing factors of K.S.A. 21-4606 and stated that the sentence was based on the circumstances of the crime. Further, the trial court stated in justifying the sentence:

> "One thing that does impress this court, at no time during any of these things, nor even at this hearing today has this defendant expressed any remorse whatsoever to his actions. Rape [and] aggravated criminal sodomy are crimes of violence. The facts in this case indicate that there was a great deal of violence and threat and force perpetrated upon this victim."
>
> "It is the sentencing judge alone who determines the appropriate sentence or other disposition of the case. The sentencing judge determines the sentence by exercising his or her best judgment, common sense, and judicial discretion after considering the sentencing factors set forth in K.S.A. 21-4606(2), all the reports, the defendant's background, the facts of the case, and the public safety." *State v. McCloud*, 257 Kan. 1, 8-9, 891 P.2d 324, *cert. denied* 516 U.S. 837 (1995).
>
> " 'The statutory factors which the judge shall take into consideration in determining the penalty to be imposed are enumerated in K.S.A. 21-4606. Where the sentence exceeds the minimum, the legislature intended that the sentencing judge place on the record a detailed statement of facts and factors the judge considered.' " *State v. Manning*, 257 Kan. 128, 133, 891 P.2d 365 (1995) (quoting *State v. Richard*, 252 Kan. 872, 881, 850 P.2d 844 [1993]).

Here, the trial court did exactly this. In sentencing the defendant to two concurrent terms of 15 years to life, the trial court exceeded

the minimum sentence. However, the trial court determined the sentence by relying on the factors set forth in K.S.A. 21-4606(b), such as the hospital reports, the defendant's background, the facts of the case, and public safety. The judge placed on the record a detailed statement of facts he considered in sentencing the defendant, such as—the evidence presented at trial, the presentence investigation report, the Larned report, the TCF report, the violent nature of the crimes, and the defendant's lack of remorse. Each of these factors is supported by evidence in the record. Specifically, the factor that the defendant lacked remorse is supported by evidence in the record. The Larned report, the TCF report, and the defense counsel's statements at sentencing all indicated that the defendant lacked remorse regarding these crimes. The trial court did not rely on the defendant's silence in deciding that the defendant lacked remorse. Instead, the trial court relied on the record to make this determination. Further, the trial court properly relied on the violence of the crimes, the emotional trauma to the victim, and the defendant's threat to public safety in sentencing the defendant. This issue fails.

## IV. SEX OFFENDER REGISTRATION

At the sentencing hearing, the trial court found that the defendant was a sex offender. It informed the defendant that he had the responsibility upon release from prison of reporting to and registering with the local sheriff's department as a sex offender, pursuant to K.S.A. 22-4909 of the Kansas Sex Offender Registration Act (KSORA). The KSORA was enacted on April 14, 1994. Since the crimes at issue occurred prior to April 14, 1994, the defendant asserts that the trial court's order for him to comply with the public disclosure requirements, pursuant to K.S.A. 22-4909 of the KSORA, violates the Ex Post Facto Clause of the United States Constitution. In support of his position, the defendant cites *State v. Myers*, 260 Kan. 669, 701-02, 923 P.2d 1024 (1996), *cert. denied* 521 U.S. 1118, (1997).

In *Myers*, the defendant was convicted of aggravated sexual battery, a crime which occurred prior to April 14, 1994, the effective date of the KSORA. Nonetheless, the trial court ordered Myers to

be processed under the KSORA as a "sex offender." Such registration caused Myers problems because when the general public became aware that he was a sex offender, he could not find a place to rent. Myers filed a motion to eliminate the registration requirement because it was ex post facto legislation which violated Art. I, § 10 of the United States Constitution. Myers' motion was denied, and he appealed to this court.

This court upheld the KSORA as constitutional and stated that Myers was required to register under it. However, in order to avoid violating the Ex Post Facto Clause, this court held that neither the registration of Myers nor the registration of anyone else who is required to register under the KSORA for crimes committed prior to the act's effective date shall be open to public inspection or subject to the provisions of the Kansas Open Records Act, K.S.A. 45-215 *et seq*. 260 Kan. at 671. In so holding, this court stated:

"We hold that the legislative aim in the disclosure provision was not to punish and that retribution was not an intended purpose. However, we reason that the repercussions, despite how they may be justified, are great enough under the facts of this case to be considered punishment. The unrestricted public access given to the sex offender registry is excessive and goes beyond that necessary to promote public safety.

"Because KSORA's disclosure provision makes more burdensome the punishment for a crime after its commission, we conclude K.S.A. 22-4909, as applied to Myers, violates the constitutional prohibition against ex post fact laws.

. . . .

"Public access to sex offender registration is a matter of legislative public policy. Although we defer to the legislature on policy matters, we must, however, exercise our duty of analysis when ex post facto claims impact legislative policy. Would-be sex offenders have been on notice since April 14, 1994, when KSORA became law, that if they commit certain crimes they will be subject to public disclosure under K.S.A. 22-4909. Myers, whose offense was committed before April 14, 1994, had no such notice. The significant date in an ex post facto analysis is the date of the offense, not the date of conviction. *Weaver v. Graham*, 450 U.S. 24, 30-31, 67 L. Ed. 2d 17, 101 S. Ct. 960 (1981). To avoid the ex post facto characterization, public access should be limited to those with a need to know the information for public safety purposes. This information should be used by those given access to it only for such purposes. As the law is written now, no such measures are in place for Myers.

. . . .

"We uphold the constitutionality of the registration requirement in KSORA. K.S.A. 22-4904, K.S.A. 22-4906, and K.S.A. 22-4907. The disclosure provision allowing public access to sex offender registered information, K.S.A. 22-4909, when applied to Myers, is unconstitutional punishment under the Ex Post Facto Clause. The unlimited public accessibility to the registered information and the lack of any initial individualized determination of the appropriateness and scope of disclosure is excessive, giving the law a punitive effect—notwithstanding its purpose, shown in the legislative history, to protect the public.

. . . .

*"To prevent an ex post facto violation, each sheriff's office shall adopt a record system that prevents public access or disclosure of the statements or any other information required by KSORA of any sex offender required to register whose offense occurred before April 14, 1994. Any such statements or other information shall neither be open to the public nor subject to the provisions of the Kansas Open Records Act, K.S.A. 45-215 et seq."* 260 Kan. at 699-702. (Emphasis added.)

Under the record system ordered in *Myers,*, the sheriff's office cannot disclose the statements or information of sex offenders whose crime occurred prior to April 14, 1994, to the general public nor make the information subject to the Kansas Open Records Act. These measures taken by the sheriffs' offices, pursuant to the *Myers* case, will prevent an ex post facto violation as to the sex offenders required to register under KSORA whose crimes occurred prior to the effective date of the Act. 260 Kan. at 702.

Thus, when the defendant actually registers with the sheriff's office pursuant to KSORA at the time of his release from prison, the sheriff's office will have these measures in place. With this record system in place, the sheriff's office cannot and will not disclose the statements or information of the defendant, a sex offender whose crime occurred prior to April 14, 1994, to the general public or make the information subject to the Kansas Open Records Act. Thus, with this record system in place, as ordered by the *Myers* case, the defendant's required registration under the KSORA, pursuant to the trial court's orders, will not violate the Ex Post Facto Clause of the United States Constitution. There is no need to remand this case to the trial court for the entry of a new journal entry specifying that the public disclosure requirements of the KSORA (K.S.A. 22-4909) do not apply to the defendant. The *Myers* case

already makes this clear and protects against improper public disclosure under KSORA. As such, this issue fails.

Affirmed.