NOT DESIGNATED FOR PUBLICATION

No. 112,920

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

STATE OF KANSAS,
*Appellee*,

v.

MANZOOR JAGHOORI,
*Appellant*.

MEMORANDUM OPINION

Appeal from Johnson District Court; THOMAS KELLY RYAN, judge. Opinion filed August 12, 2016. Affirmed.

*Michael P. Whalen*, of Law Office of Michael P. Whalen, of Wichita, for appellant.

*Steven J. Obermeier*, senior deputy district attorney, *Stephen M. Howe*, district attorney, and *Derek Schmidt*, attorney general, for appellee.

Before GARDNER, P.J., BUSER and STANDRIDGE, JJ.

*Per Curiam*: Manzoor Jaghoori appeals his conviction for aggravated robbery following a second jury trial. His earlier conviction for the same offense and additional offenses of aggravated assault and criminal possession of a firearm were set aside based on his claim of ineffective assistance of counsel. In this appeal, the defendant argues that the jury instruction defining the elements of aggravated robbery (1) was broader than the crime alleged in the complaint and (2) allowed for a conviction under alternative means without requiring the State to prove each means beyond a reasonable doubt. Finding no reversible error, we affirm.

FACTS

Jaghoori's conviction stemmed from an altercation arising out of his effort to regain possession of stereo speakers on behalf of Ashley Clark, his girlfriend. Clark purchased the speakers from Gregorio De Lao, who was her former boyfriend. De Lao recently had repossessed the speakers from Clark after she failed to pay in full for them as she had promised. Several people were involved in or witnessed the altercation between Jaghoori and De Lao. Each had different accounts of how the events unfolded, including who started the fight and whether Jaghoori had a gun.

The altercation occurred in 2006. The first trial took place in 2007. After the first trial, a jury convicted Jaghoori of two counts aggravated assault and one count each of aggravated robbery and criminal possession of a firearm. Jaghoori's convictions were upheld on direct appeal, but he ultimately was granted a new trial in postconviction proceedings based on a finding that he was deprived of his right to effective assistance of counsel during trial. See *Jaghoori v. State*, No. 108,892, 2013 WL 5925964 (Kan. App. 2013) (unpublished opinion), *rev. denied* 299 Kan. 1270 (2014).

Before the second trial was to begin in August 2014, the State filed a motion to allow the testimony of three witnesses, including the victim, to be presented to the jury in the form of prior testimony from the first trial. In support of the request, the State claimed the witnesses were unavailable. The district court granted the motion, finding sufficient evidence that the State had exercised due diligence and put forth a good-faith effort in an attempt to produce the witnesses for trial but to no avail. See K.S.A. 60-459(g) (defining "unavailable as a witness" to include circumstances where the witness is "absent from the place of hearing because the proponent of his or her statement does not know and with diligence has been unable to ascertain his or her whereabouts"); see also *State v. Young*, 277 Kan. 588, 597-98, 87 P.3d 308 (2004) (The State must show that the witness cannot be produced at trial by the exercise of due diligence and good faith in order for the court

to declare a witness unavailable and to permit use of prior testimony from an absent witness.).

At trial, the jury heard testimony from De Lao stating that on the evening of August 21, 2006, Jaghoori and some other men approached him in the alley as he left work. Jaghoori asked De Lao where the speakers were while holding a pistol up to the side of De Lao's face and neck. When De Lao responded that he did not have them, another man hit him with a "tube." De Lao fell to the ground as the men continued to punch and kick him, and then Jaghoori asked De Lao for the keys to his car. According to De Lao, he did not want to give Jaghoori the keys, but he did so to avoid additional beating. Someone then took De Lao's car, but De Lao did not see who was driving.

The jury heard testimony from two other witnesses who corroborated De Lao's version of events. The testimony from these witnesses stated that they saw Jaghoori with a gun, observed the men hitting and kicking De Lao, and saw Jaghoori take De Lao's keys. These witnesses also testified that Jaghoori gave the keys to a girl who drove De Lao's car away from the scene.

Clark testified at the second trial in person. She said that De Lao pulled a knife on Jaghoori during the altercation and that Jaghoori did not have a gun. Clark remembered that Jaghoori handed her the keys to De Lao's car and that she then drove away in the car with Jaghoori in the passenger seat. She specifically remembered that Jaghoori was in the passenger seat and not the driver's seat because Jaghoori did not know how to drive a standard transmission car.

Jaghoori, for his part, denied having a gun during the altercation. He claimed that De Lao was armed with a knife and started the fight. Jaghoori admitted to hitting De Lao several times, even after De Lao fell to the ground. Jaghoori said that when he asked De Lao for the speakers, De Lao voluntarily gave Jaghoori the keys to his car. Believing the

speakers were in De Lao's car, Jaghoori said he took the keys, gave them to Clark, and told her to get the speakers. Instead, Jaghoori said Clark drove away in De Lao's car. Jaghoori said that he then left in his brother's car. Jaghoori's brother, who also was present during the altercation, provided testimony similar to that provided by Jaghoori.

The jury ultimately found Jaghoori guilty of aggravated robbery and not guilty on the remaining charges. The district court denied Jaghoori's posttrial motion for judgment of acquittal and motion for new trial. Jaghoori was sentenced to 216 months in prison for his conviction of aggravated robbery.

ANALYSIS

Jaghoori raises two issues on appeal. First, he claims the aggravated robbery jury instruction was broader than the crime alleged in the complaint. Second, he claims this instruction allowed for a conviction under alternative means and the State failed to prove each means beyond a reasonable doubt. We address each of these claims in turn.

*Jury instructions*

The standard of review when addressing challenges to jury instructions is based upon the following analysis:

> "'(1) First, the appellate court should consider the reviewability of the issue from both jurisdiction and preservation viewpoints, exercising an unlimited standard of review; (2) next, the court should use an unlimited review to determine whether the instruction was legally appropriate; (3) then, the court should determine whether there was sufficient evidence, viewed in the light most favorable to the defendant or the requesting party, that would have supported the instruction; and (4) finally, if the district court erred, the appellate court must determine whether the error was harmless, utilizing the test and degree of certainty set forth in *State v. Ward*, 292 Kan. 541, 256 P.3d 801 (2011), *cert.*

4

*denied* 132 S. Ct. 1594 (2012).' [Citation omitted.]" *State v. Woods*, 301 Kan. 852, 876, 348 P.3d 583 (2015).

In the complaint, Count I described the property Jaghoori took as "to-wit: a black 1996 Volkswagen Jetta car." The State's proposed jury instruction relating to this count dropped the to-wit clause and identified the property Jaghoori took simply as "property." Jaghoori objected at the instructions conference and asked the district court to reinsert the to-wit clause in the instruction to make it consistent with the complaint. The district court denied Jaghoori's request, noting that the State's proposed instruction was patterned after PIK Crim. 4th 54.410 and was identical to the aggravated robbery jury instruction issued in Jaghoori's first trial. As requested by the State, jury instruction No. 12 identified the property Jaghoori took as "property."

Jaghoori argues that this instruction broadened the basis for his conviction beyond the taking of specific property from De Lao as charged in the complaint—a black 1996 Volkswagen Jetta—by allowing the jury to convict him based on the taking of *any* property from De Lao, including but not limited to the keys to De Lao's black 1996 Volkswagen Jetta.

During the instructions conference, Jaghoori objected to the proposed language ultimately used by the district court in the instruction at issue here. Accordingly, Jaghoori's challenge to the instruction is reviewable on appeal.

Next, we consider whether the instruction was legally appropriate. Recently, our Supreme Court explained Kansas law regarding overly broad jury instructions:

"A jury instruction on the elements of a crime that is broader than the complaint charging the crime is erroneous. The reason for this is because the charging instrument sets out the specific offense alleged to inform the defendant of the nature of the accusation, to permit the development of a defense to meet that accusation, and to protect

5

against conviction based on facts not contemplated in the accusation. Accordingly, the State is bound by the wording of its charging document, and the prosecution and district court must use caution in conforming the jury instructions to the charges."

"Generally, if a jury instruction on the elements of a crime adds alternate statutory elements that were not contained within the language of the complaint or information charging the defendant with the crime, the instruction is overly broad and, thus, erroneous." *State v. McClelland*, 301 Kan. 815, Syl. ¶¶ 4-5, 347 P.3d 211 (2015).

There appear to be no Kansas cases that address whether the specific items of property listed in the complaint should be listed in the jury instructions for robbery. Cases that address overbroad jury instructions generally deal with instructions that add alternate elements of a crime from the statutory language that were not included in the complaint. See, *e.g.*, *State v. Hart*, 297 Kan. 494, 508-09, 301 P.3d 1279 (2013) (finding overbroad jury instruction requiring crime of indecent liberties with a child be committed with intent to arouse sexual desires of victim or defendant or both, but complaint only alleged intent to satisfy sexual desires of defendant); *State v. Jones*, 290 Kan. 373, 383-84, 228 P.3d 394 (2010) (finding overbroad jury instruction for aggravated kidnapping that included additional statutory elements beyond what was charged); *State v. Trautloff*, 289 Kan. 793, 802-03, 217 P.3d 15 (2009) (finding overbroad jury instruction for sexual exploitation of child that encompassed "the broadest possible theory of misconduct under the statute," while complaint charged defendant very narrowly and evidence tending to prove narrowly tailored charge was minimal and circumstantial); *State v. Wade*, 284 Kan. 527, 537, 161 P.3d 704 (2007) (finding overbroad jury instruction for aggravated burglary predicated on underlying felony of either first-degree murder or aggravated assault when defendant was not on notice that aggravated assault could be underlying felony); *State v. Hemby*, 264 Kan. 542, 547-50, 957 P.2d 428 (1998) (finding overbroad jury instruction for sodomy that allowed conviction for oral or anal copulation when complaint only charged oral copulation); *State v. Turbeville*, 235 Kan. 993, 997-98, 686 P.2d 138 (1984) (finding overbroad jury instructions for kidnapping that included statutory alternate intents "to terrorize another" and "to facilitate flight" that were not

6

included in complaint). The common theme in these cases is the addition of statutory language in the jury instruction that was not included in the complaint.

Here, the elements required by the jury instruction accurately match the statutory language for aggravated robbery. The instruction at issue stated:

"The defendant is charged with the crime of aggravated robbery. The defendant pleads not guilty.

"To establish this charge, each of the following claims must be proved:

"1.  That the defendant intentionally took property from the person of Gregorio Urbieta De Lao;

"2.  That the taking was by threat of bodily harm to Gregorio De Lao and/or by force;

"3.  That the defendant was armed with a dangerous weapon and/or inflicted bodily harm on any person in the course of such conduct; and

"4.  That this act occurred on or about the 21st day of August, 2006, in Johnson County, Kansas."

At the time of incident, K.S.A. 21-3426 defined robbery as "the taking of property from the person or presence of another by force or by threat of bodily harm to any person." K.S.A. 21-3427 defined aggravated robbery as a robbery "committed by a person who is armed with a dangerous weapon or who inflicts bodily harm upon any person in the course of such robbery." The applicable pattern instruction for aggravated robbery recommended instructing jurors that they must find the defendant intended to take "property" from a person or the presence of a person and nothing in the notes and comments suggest specifying the items of property in the jury instructions. PIK Crim. 3d 56.31; see PIK Crim. 4th 54.410. Although the use of PIK instructions is not required, it is strongly recommended, as these instructions have been developed by a knowledgeable committee to bring accuracy, clarity, and uniformity to jury instructions. *State v. Acevedo*, 49 Kan. App. 2d 655, 663, 315 P.3d 261 (2013), *rev. denied* 300 Kan. 1104

7

(2014); see *State v. Appleby*, 289 Kan. 1017, Syl. ¶ 20, 221 P.3d 525 (2009) (absent need to modify instruction based on particular facts, PIK instructions and recommendations should be followed).

The complaint charged Jaghoori with unlawfully, feloniously, and willfully taking property from the person or presence of another by force or by threat of bodily harm to the person while armed with a dangerous weapon or by inflicting bodily harm in the the course of such robbery. The complaint specified that the property was "to-wit: a black 1996 Volkswagen Jetta car" and identified the owner of the property as De Lao.

Unlike the cases cited previously, the jury instruction here did not include alternate methods of committing aggravated robbery that were not charged in the complaint. Thus, the jury instruction on the elements of the crime was not broader than the complaint because both alleged aggravated robbery exclusively under the statutory elements required by K.S.A. 21-3426 and K.S.A. 21-3427, the statutes applicable during the relevant time period here. We find no error.

But even if the instruction had been defective in some way, we deem any such error harmless. The issue boils down to whether Jaghoori's right to a fair trial was substantially compromised by the instruction. Jaghoori identifies no particularized constitutional error, and we consider none. We then ask whether there was a reasonable probability the error affected the outcome of the trial. *Ward*, 292 Kan. 541, Syl. ¶ 6 (standard for assessing prejudice of nonconstitutional error attributable to the State). Because Jaghoori objected to the instruction as given below, the State bears the burden of showing the absence of that probability. *State v. McCullough*, 293 Kan. 970, 983, 270 P.3d 1142 (2012).

Evaluating the record as a whole, we find there was no reasonable probability the result at trial would have been different had the instruction error not occurred. If the instruction had required the jury to find that Jaghoori taken property, a black 1996 Volkswagen Jetta car, then there is a reasonable probability that the jury would have reached the same verdict because there was evidence that Jaghoori took the black 1996 Volkswagen Jetta car from De Lao by threat or infliction of bodily harm. Specifically, Clark—who was the only witness to testify in person at the retrial—testified that Jaghoori took the keys from De Lao, handed them off to her, and then they both drove away in the Jetta with Jaghoori in the passenger seat. She specifically remembered that Jaghoori was in the passenger seat and not the driver's seat because Jaghoori did not know how to drive a standard transmission car.

On a final note, Jaghoori suggests an additional error based on the aggravated robbery instruction requiring proof that he "intentionally" took property from De Lao, rather than proof that he "willfully" took property as alleged in the complaint. Jaghoori claims this change further expanded the scope of his criminal liability. Contrary to Jaghoori's assertion, however, K.S.A. 21-3201(b), the statute in effect at the time of Jaghoori's crime, provided that the term "willful" is included within the term "intentional." Jaghoori's argument on this point necessarily fails.

*Alternative means*

Next, Jaghoori argues the aggravated robbery jury instruction established alternative means of committing the crime and the State failed to prove each means beyond a reasonable doubt.

> "Alternative means essentially entail materially different ways of committing a particular crime based on the statutory definition or elements of the offense. When criminal statutes create two or more distinct ways of committing an offense, those ways reflect alternative means. Other criminal statutes establish only one way to commit an

9

offense, although they may use synonymous or redundant terms to define the prohibited conduct. Such statutes do not set forth alternative means." *State v. Schreiner*, 46 Kan. App. 2d 778, Syl. ¶ 1, 264 P.3d 1033 (2011), *rev. denied* 296 Kan. 1135 (2013).

Alternative means must be proved to a jury beyond a reasonable doubt to ensure jury unanimity. *State v. Wright*, 290 Kan. 194, 201, 224 P.3d 1159 (2010), *disapproved on other grounds by State v. Brooks*, 298 Kan. 672, 683 317 P.3d 54 (2014). Determining whether a jury instruction presents alternative means of committing a crime is a question of law over which this court exercises unlimited review. See *State v. Arnett*, 290 Kan. 41, 47, 223 P.3d 780 (2010).

As already set forth above, K.S.A. 21-3427 defined aggravated robbery as "a robbery, as defined in K.S.A. 21-3426 and amendments thereto, committed by a person who is armed with a dangerous weapon or who inflicts bodily harm upon any person in the course of such robbery." Robbery is defined in K.S.A. 21-3426 as "the taking of property from the person or presence of another by force or by threat of bodily harm to any person." Consistent with this statutory language, the jury was instructed, in relevant part, that in order to find Jaghoori guilty of aggravated robbery, it would have to find that "[t]he defendant was armed with a dangerous weapon, to wit: handgun and/or inflicted bodily harm on any person in the course of such conduct." Relying on *State v. Reed*, 45 Kan. App. 2d 372, 385, 247 P.3d 1074, *rev. denied* 292 Kan. 968 (2011), Jaghoori argues the State was required to have proved both alternative means (armed with a dangerous weapon and inflicted bodily harm) to preserve his statutory right to jury unanimity. To that end, he asserts there was insufficient evidence presented at trial to establish that he possessed a handgun.

But Jaghoori's reliance on *Reed* is misplaced. Since that case was decided, the Kansas Supreme Court has clarified that legislative intent must be considered when determining whether a statute defines an alternative means crime. *State v. Brown*, 295

Kan. 181, 193, 284 P.3d 977 (2012). The court concluded the word "or" does not alone signify alternative means; rather, multiple "material elements" must be charged, such as those requiring a different *mens rea*, a different *actus rea*, or a different causation element. 295 Kan. at 194-96. Specifically, the court held that statutory language describing "options within a means" or the "factual circumstances" which prove the underlying crime does not raise an alternative means issue. 295 Kan. 181, Syl. ¶¶ 10, 11.

After *Brown*, other panels of our court have held that the statutory language "by force or by threat of bodily harm" does not raise an alternative means issue. See *State v. Cato-Perry*, 50 Kan. App. 2d 623, 628, 332 P.3d 191 (2014), *rev. denied* 302 Kan. 1013 (2015) (concluding that "the words by force or by threat of bodily harm are merely different options or means of compelling the taking of someone else's property, the focus of the crime of robbery"); *State v. Tyree*, No. 107,939, 2016 WL 853015, at *3 (Kan. App.) (unpublished opinion), *petition for rev. filed* April 4, 2016; *State v. Barnett*, No. 106,133, 2013 WL 4729219, at *5 (Kan. App. 2013) (unpublished opinion), *rev. denied* 299 Kan. 1271 (2014); *State v. Henderson*, No. 107,193, 2013 WL 3970170, at *3 (Kan. App. 2013) (unpublished opinion), *rev. denied* 299 Kan. 1272 (2014); *State v. Dewberry*, No. 106,701, 2013 WL 2321039, at *11 (Kan. App. 2013) (unpublished opinion); *State v. Moore*, No. 106,209, 2013 WL 1010284, at *4-5 (Kan. App.) (unpublished opinion), *rev. denied* 297 Kan. 1253 (2013); see also *State v. Haberlein*, 296 Kan. 195, Syl. ¶ 2, 290 P.3d 640 (2012) (holding that "'force, threat, or deception'" language in kidnapping statute does not raise alternative means issue), *cert. denied* 134 S. Ct. 148 (2013).

Consistent with the opinions cited above, we find the phrase "armed with a dangerous weapon, to wit: handgun and/or inflicted bodily harm" in the aggravated robbery jury instruction simply set forth options within a means or factual circumstances by which the crime of aggravated robbery may be committed. Therefore, the State was not required to prove both theories in order for there to be sufficient evidence to support Jaghoori's conviction. Even if the aggravated robbery instruction did present alternative

11

means, however, the evidence presented at trial was more than sufficient to establish that Jaghoori was armed with a handgun *and* inflicted bodily harm on De Lao.

Affirmed.